IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Ryan Sellers, On Behalf of Herself and All Others Similarly Situated, | Civil Action No. 2:17-cv-2758-RMG |
| Plaintiff, | |
| v. | ORDER AND OPINION |
| Keller Unlimited LLC, DBA Two Keys Tavern; 57 Limited LLC, DBA Two Keys Public House and Mark Keller, *individually*, | |
| Defendants. | |

Before the Court is Defendants' motion to alter the judgment (Dkt. No. 69) and Plaintiffs' motion for post-judgment interest and attorneys' fees (Dkt. No. 70). For the reasons set forth below, Defendants' motion is granted in part and denied in part and Plaintiffs' motion is denied.

I. **Background**

Defendant Mark Keller is the sole member of Defendant Keller Unlimited, LLC, which owns and operates two restaurant-sports bars—Two Keys Public House in Summerville, South Carolina and Two Keys Tavern in Ladson, South Carolina—at which Plaintiffs were employed as bartenders. (Dkt. No. 23-1 at 1.) On June 28, 2019, the Court denied Defendants' motion to decertify the conditionally certified class, and granted Plaintiffs' motion for summary judgment, finding that Defendants clearly violated the Fair Labor Standards Act ("FLSA") by deducting bar shortages from Plaintiff' paychecks, thus lowering Plaintiffs' earnings below the statutory minimum wage. (Dkt. Nos. 55, 56.) The Court also found that Defendants willfully violated the FLSA and that Plaintiffs were entitled to liquidated damages. (Dkt. No. 56.) However, while the Court entered Judgement for Plaintiffs, the Parties disagreed over how to calculate damages, as Plaintiffs argued that the unpaid wages included the amount of the tip credit taken by Defendants,

and Defendants argued that, at most, they were liable for the amounts deducted for bar shortages. (Dkt. Nos. 64, 65.) The Court held that Defendants were liable for the amount taken as a tip credit, holding that Defendants could not take advantage of the tip credit as they had failed to comply with § 203(m) of the FLSA. (Dkt. No. 66.) The Court calculated Plaintiffs' damages, inclusive of liquidated damages, as $63,043.66. (*Id.* at 7.) These damages were later amended to $51,696.29 based on updated calculations submitted by Plaintiffs. (Dkt. No. 68.) Additionally, the Court awarded $69,973.46 in attorneys' fees and costs. (Dkt. No. 66 at 5 – 7.)

Defendants now move for the Court to reconsider its prior Judgment, pursuant to Rule 59 of the Federal Rules of Civil Procedure. (Dkt. No. 69.) Defendants largely focus on the Court's calculation of damages and holding that Defendants forfeited the tip credit by impermissibly deducting bar shortages from Plaintiffs' paychecks, arguing that calculating the damages as equal to the tip credit was clear error. (Dkt. No. 69-1) Defendants also seek to relitigate their liability, arguing that there is a dispute of material fact regarding whether the deductions caused Plaintiffs' wages to fall below minimum wage and whether Defendants' conduct was willful. (*Id.* at 9 – 12.) Finally, Defendants ask the Court to reconsider the award of attorneys' fees and costs. (*Id.* at 17.) Plaintiffs oppose the motion, and Defendants filed a reply. (Dkt. Nos. 70, 71.)

## II. Legal Standard

Federal Rule of Civil Procedure 59 allows a party to move to alter or amend a judgment within twenty-eight days. Fed. R. Civ. P. 59(e). The Court may grant a motion for reconsideration only in limited circumstances: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). A Rule 59 motion tests whether the Court's initial Order was "factually supported and legally justified." *Hutchinson v. Staton*, 994 F.2d 1076, 1081-82 (4th Cir. 1993). Therefore, the Court

may decline to reconsider a prior holding that "applied the correct legal standards" and made "factual findings [ ] supported by substantial evidence." *Harwley v. Comm'r of Soc. Sec. Admin.*, 714 Fed. Appx. 311, 312 (Mem) (4th Cir. 2018). As a result, Rule 59(e) provides an "extraordinary remedy which should be used sparingly." *Pac. Ins. Co.*, 148 F.3d at 403.

**III.   Discussion**

First, Defendants have identified no intervening change in law, no new evidence, and no clear error that would require reconsideration of the Court's determination that Defendants violated the FLSA by deducting bar shortages from Plaintiffs' paychecks. The undisputed evidence, as reiterated by the Defendants in their motion for reconsideration, demonstrate that Defendants paid Plaintiffs between $4.13 and $4.75 per hour. (Dkt. Nos. 41-2 at 4; 45-1 ¶ 2; 69-1 at 15.) As explained in 29 U.S.C. § 203(m)(2),[1] this was the "cash wage paid such employees...." To reach the minimum wage, $7.25 per hour, the Defendants were permitted to include as part of the Plaintiffs' wages "an additional amount on account of the tips received by such employee" equal to the difference of the cash wage and the minimum wage. 29 U.S.C. § 203(m)(2)(ii). This is traditionally called the "tip credit." Defendants could count this tip credit towards the minimum wage requirement so long as the amount was at most $5.12 per hour and did not exceed the value of tips actually received by Plaintiffs. 29 U.S.C. § 203(m)(2)(ii). As the tip credits never exceeded $3.12 here, they were permissible under the statute. (Dkt. No. 65 at 3.) These two components of a tipped employee's wages, "cash wage" plus a "tip credit" must equal $7.25.

However, where an employer takes an impermissible deduction out of an employee's cash wage, the employee's wage cannot equal the statutory minimum wage. Namely, under

---

[1] As Defendants correctly note, the reference to "Section 203(m)(3)" in the Court's prior Order, Dkt. No. 66 at 4, was a typographical error, and instead the Order reviewed the requirements of Section 203(m)(2).

§203(m)(2)(A), the "amount paid" to an employee is the cash wage plus the tip credit. As it is undisputed that the cash wage here was between $4.13 and $4.75 per hour, any deduction from that cash wage caused the Plaintiffs' wage, supplemented by a no-greater than $3.12 per hour tip credit at the time, to fall below $7.25. Therefore, Defendants did not comply with the requirements of Section 203(m)(2) and violated the FLSA. Defendants' position is based in their attempt to credit as paid-wages other tips not previously included in the tip credit, arguing that if the Court considered all tips, most Plaintiffs' wages would exceed the minimum wage.[2] However, as the Department of Labor's Wage and Hour Division has explained,

> When an employer claims an FLSA 3(m) tip credit, the tipped employee *is considered to have been paid only the minimum wage for all non-overtime hours worked in a tipped occupation* and the employer may not take deductions for walkouts, cash register shortages, breakage, cost of uniforms, etc., *because any such deduction would reduce the tipped employee's wages below the minimum wage.*

*See* Wage and Hour Div., U.S. Dep't of Labor, Fact Sheet # 15 Tipped Employees Under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs15.pdf. (emphasis added) (Dkt. No. 45-3 at 3.) Therefore, Plaintiffs' cash wage between $4.13 and $4.75 plus the tip credit equaled the minimum wage, and any deduction reduced the Plaintiffs' wages below the minimum wage. Other courts have found that similar deductions from the cash wages of tipped employees violate the FLSA. *See, e.g.*, *Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1199 (5th Cir. 1972) ("this agreement tended to shift part of the employer's business expense to the employees and was illegal to the extent that it reduced an employee's wage below the statutory minimum. This amounts to nothing more than an agreement to waive the minimum wage

---

[2] It should be noted that, even if the Court credited Defendants' argument that liability only attaches if the cash wage falls below $2.13 per hour based on the bar shortage deduction, Plaintiffs' would still prevail, as at least two of the Plaintiffs' wages fell below $2.13 per hour after the bar shortage deduction. (Dkt. No. 65-2 at 1.)

requirements of the Fair Labor Standards Act. Such an agreement is invalid.");[3] *Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d 670, n. 7 (D. Md. 2012) ("Businesses are disqualified from taking a tip credit where they deduct[ ] losses due to cash register shortages and unpaid taps from employees' paychecks or nightly tips.") (internal quotation marks omitted); *Bernal v. Vankar Enterprises, Inc.*, 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008) ("Additionally and alternatively, summary judgment on the issue is appropriate because the unrebutted evidence establishes that Defendants deducted losses due to cash register shortages and unpaid tabs from Plaintiffs' paycheck[s] or nightly tips."). Therefore, the Court does not disturb its holding on liability.

Further, the Court will not disturb its ruling on willfulness and a three-year statute of limitations. To show willfulness, Plaintiffs must show that Defendants "either knew or showed reckless disregard for the matter of whether [their] conduct was prohibited by" the FLSA. *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 358 (4th Cir. 2011) (citations omitted). Defendants have identified no intervening change in law, no new evidence, and no clear error of law that would require reconsideration of the Court's holding on the applicable statute of limitations. Instead, the facts remain that Mr. Keller did not consult with a lawyer on labor law compliance (Dkt. No. 41-1 at 12, 17, 28); did not consult with a lawyer on his practice of bar shortage deductions (*Id.* at 22); did not himself research labor laws (*Id.* at 15); and did not take any steps to verify that the payroll company was ensuring employees were properly paid (*Id.* at 18). Most notably, at the time of the Court's summary judgment Order, even after having been put on notice of the applicable law by Plaintiffs' complaint and after receiving a recommendation to not "charg[e] staff for losses," Mr. Keller continued to deduct bar shortages from paychecks and

---

[3] Indeed, as demonstrated by *Mayhue*, the Terms of Employment used here, which require repayment of any bar shortage without regard to whether the deduction reduces the employee's wages below the minimum wage, were impermissible. (Dkt. No. 41-5.)

continued to implement the Terms of Employment at both restaurants. (Dkt. No. 41-1 at 31 – 32, 35.) Defendants' argument, that they were not warned of any violation by non-attorney managers or their payroll company (Dkt. No. 69-1 at 11 – 12), does not affect the Court's determination that the conduct was willful, and therefore the three-year statute of limitations applies.

However, the Court does find that, based on new argument and case law, the Court's prior calculation of damages was in error and the inflated damages award constituted a manifest injustice. As explained above, under 29 U.S.C. § 203(m)(2)(A), for a "tipped employee," an employer is permitted to meet the minimum wage by paying the employee: (i) a "cash wage" not less than $2.13 per hour, plus; (ii) "an additional amount on account of the tips received by such employee" equal to the difference of the cash wage and the minimum wage, so long as the amount is at most $5.12 per hour and does not exceed the value of tips actually received by the employee. 29 U.S.C. § 203(m)(2)(i) – (ii). An employer may take the tip credit so long as the employee has been "informed" of the provisions of § 203(m) and the employee "retain[s]" all of her tips. *Id.*

The question presented here is the proper calculation of damages where an employer makes an impermissible deduction from the employee's wages. Namely, does an employer forfeit the tip credit in calculating the unpaid wages or are the unpaid wages solely the amount of the impermissible deduction. The Court reconsiders its prior ruling and now holds that the unpaid wage is solely the amount of the impermissible deduction and does not affect the tip credit, provided an employer "informed" the employee of the provisions of § 203(m) and the employee was permitted to "retain[]" all of her tips. *Id.*

The FLSA is clear regarding how to calculate damages: "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the *amount of their unpaid minimum wages*, or their unpaid overtime compensation, as

the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) (emphasis added). The damages provisions of the FLSA, § 216, provides only one instance where an employer forfeits the tip credit as part of damages: "[a]ny employer who violates section 203(m)(2)(B) of this title shall be liable to the employee or employees affected in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages." *Id.* Section 203(m)(2)(B) states that an employer may not keep the tips received by its employees. The Fourth Circuit has also recognized that where an employer fails to inform an employee of the tip credit provisions, as required under § 203(m)(2)(A)(ii), the employer "gets no credit" towards minimum wage from any tips received by the employee. *Richard v. Marriott Corp.*, 549 F.2d 303, 305 (4th Cir. 1977).

Here, however, there is no allegation or record evidence that § 203(m)(2)(B) has been violated, and therefore § 216(b)'s penalty of tip forfeiture does not apply. Further, unlike in *Richard v. Marriott Corp.*, there is no allegation or record evidence that the two prerequisites for taking the tip credit in the first instance, namely notice and permitting employees to retain their tips, have been violated. Furthermore, the actual amount of unpaid wages, the term used by § 216(b) to calculate damages, is solely the amount of the bar shortage deduction. The Court therefore reconsiders its prior damages order forfeiting the tip credit, and holds that Defendants are solely liable for the actual amount of bar shortage deductions taken from Plaintiffs' cash wages.

Though neither the Supreme Court nor the Fourth Circuit has previously opined on the issue of a tip credit where an employer otherwise failed to pay minimum wage, other district courts have similarly held that the proper calculation of damages is confined to the actual unpaid wages, not forfeiture of the tip credit in its entirety. Most notably, another court in this District addressed a substantially similar issue in *Perez v. Ocean View Seafood Rest., Inc.*, 217 F. Supp. 3d 868

(D.S.C. 2016). In *Perez,* the employer failed to pay the plaintiffs the required $2.13 cash wage and plaintiffs contended that they were entitled to the full $7.25 per hour as damages, thus eliminating credit for any tips received, since Defendants failed to "comply entirely with the minimum wage requirements[.]" *Id.* at 874 – 875. The court in *Perez,* however, disagreed with this conclusion, holding instead that as the defendants both "informed their employees of their intent to use the tip credit and...allowed the tipped employees to retain all tips receive[,]" defendants were entitled to include the tip credit as wages paid when calculating damages. *Id.* at 876. Other district courts have reached similar conclusions. *See Dominguez v. Quigley's Irish Pub, Inc.*, 790 F. Supp. 2d 803, 819 (N.D. Ill. 2011) ("Neither § 216(b) nor any other section of the Act prescribes loss of an otherwise valid tip credit as the consequence of or a remedy for a § 206 or § 207 violation."); *Muldowney v. Mac Acquisition, LLC*, No. 09–22489–CIV, 2010 WL 520912, at *1 (S.D. Fla. Feb. 9, 2010) (holding an employer eligible to take advantage of the tip credit provision even though he had neglected to pay an employee for work performed off-the-clock); *Perez v. Palermo Seafood, Inc.*, 548 F.Supp.2d 1340, 1348 (S.D. Fla. 2008), *aff'd*, 302 Fed. Appx. 905 (11th Cir. 2008) (holding an employer eligible to take advantage of the tip credit provision despite not fully compensating an employee for overtime work).

Therefore, based on the interpretation of the plain terms of § 203(m) and § 216(b), and supported by the holdings of other district courts, Defendants did not forfeit the tip credit by failing to pay minimum wage, and instead damages are calculated as solely the amount of the impermissible bar shortage deductions. As the Court previously held, as Defendants have not demonstrated that its violation of the FLSA was in good faith or reasonable, Plaintiffs are entitled to liquidated damages on the unpaid wages as well. *See* 29 U.S.C. § 216(b); 29 U.S.C. § 260. Therefore, based on Defendants' uncontroverted prior submissions, the total unpaid wages in this

case is $7,626.36, equal to the total bar shortage deductions taken from Plaintiffs' wages. (Dkt. Nos. 65-1; 65-2.) Therefore, including liquidated damages, the Court reconsiders its prior award of damages and awards $15,252.72 in damages.

Finally, Defendants argue that the Court should reconsider its award of attorneys fees and costs. "[T]he payment of attorney's fees to employees prevailing in FLSA cases is mandatory." *Burnely v. Short*, 730F.2d 136, 141 (4thCir.1984) *citing* 29 U.S.C. §216(b). However, as the FLSA only authorizes reasonable attorney's fees, "[t]he amount of the attorney's fees...is within the sound discretion of the trial court." *Id.* Turning to the factors articulated by *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 (4th Cir. 1978), the Court now finds that it would be unreasonable to award Plaintiffs' attorneys fees in the amount of their counsel's unsuccessful damages argument, particularly since briefing was necessary only after the Parties failed to reach an agreement on damages. This adjustment focuses particularly on the first and eighth *Barber* factors, namely, the excess time and labor expended on an unsuccessful argument and the lowered amount of success regarding damages. The Court does not reduce the attorneys' fees award for any hours worked on the attorneys' fees petition since, as a prevailing party, Plaintiffs' were entitled to attorneys' fees regardless of the holding on damages. In reviewing the Plaintiffs' attorneys' time records, it appears that 6.4 hours were dedicated to the incorrect calculation of wages.[4] (Dkt. No. 64-4 at 9 –10.) The Court also finds it appropriate to reduce by half the time spent working on the combined damages summary judgment motion and fee petition, as only the time spent working on the damages summary judgment motion was unsuccessful. (*Id.*) Half of the time spent on the motion

---

[4] The Court focuses on the entries for July 9th, 11th, and 31st and August 1st that relate to damages. (Dkt. No. 64-4 at 9 –10.) The Court has not deducted communications with opposing counsel where the topic is unknown. The Court has also not deducted time spent on a joint status report as the report was Court ordered. Finally, the Court has not deducted time spent regarding disbursement of damages checks as this work was necessary regardless of the amount of the award.

is 7.11 hours. In total, the Court therefore reduces the attorneys' fee award by 13.51 hours. As Plaintiffs' counsel has an uncontested hourly rate of $300, the Court reduces the attorneys' fee award by $4,053. The Court therefore adjusts its prior award of attorneys' fees and costs and finds that $65,920.46 is reasonable under the factors articulated by *Barber v. Kimbrell's Inc.*

Finally, as the Defendants largely prevailed regarding this motion to reconsider, the Court denies Plaintiffs' request (Dkt. No. 70 at 6) to award attorneys' fees and costs to Plaintiffs' related to this motion to amend judgment. Additionally, Plaintiffs' request that the Court award post-judgment interest under 28 U.S.C. § 1961. (Dkt. No. 70 at 7.) The Court does not "grant" post-judgment interest, instead such interest is mandatory. However, as this Court is now adjusting the prior damages award, the post-judgment interest runs from the date of the amended judgement.

### IV. Conclusion

For the foregoing reasons, Defendants' motion to alter judgment (Dkt. No. 69) is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** to the extent that the Court's prior Order on damages (Dkt. No. 66) is vacated regarding damages, and the Court awards **$15,252.72** in damages. The Court also adjusts its prior award of attorneys fees and costs and awards **$65,920.46** in attorneys' fees and costs. Defendants' motion is otherwise **DENIED**. Plaintiffs' motion for post-judgment interest and attorneys' fees (Dkt. No. 70) is **DENIED**.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

November _, 2019
Charleston, South Carolina